UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Truist Bank, <br><br>         Plaintiff, <br> v. <br><br> CMS Orders, LLC, et al. <br><br>         Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> :    Case No. 3:24-cv-09562 <br> : |

**DEFENDANT CMS ORDERS, LLC'S ANSWER AND**
**AFFIRMATIVE DEFENSES TO INTERPLEADER COMPLAINT**

CMS Orders, LLC ("CMS"), by its undersigned counsel, hereby answers Plaintiff Truist Bank's ("Plaintiff") Interpleader Complaint.

**I.     PARTIES, JURISDICTION, AND VENUE**

1.     CMS is a citizen of the State of New Jersey.

**RESPONSE:** Admits.

2.     On information and belief, Alma maintains its main office at 2831 31st Street, Astoria, NY 11102.  Alma may have an interest in a portion of the funds at issue, as described below and shown in Exhibit A hereto.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations.

3.     On information and belief, Apple maintains its main office at 122 East 42nd Street, New York, New York 10168.  Apple may have an interest in a portion of the funds at issue, as described below and shown in Exhibit A hereto.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations.

4. On information and belief, Axos maintains its main office at 4350 La Jolla Village Drive, Suite 140, San Diego, California 92122. Axos may have an interest in a portion of the funds at issue, as described below and shown in Exhibit A hereto.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations.

5. On information and belief, BANA maintains its main office at 100 North Tryon Street, Charlotte, North Carolina 28255. BANA may have an interest in a portion of the funds at issue, as described below and shown in Exhibit A hereto.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations.

6. On information and belief, Canadian Imperial maintains its main office at 81 Bay Street, Toronto, Ontario, M5J 1E6, Canada. Canadian Imperial may have an interest in a portion of the funds at issue, as described below and shown in Exhibit A hereto.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations.

7. On information and belief, Citizens maintains its main office at 1 Citizens Plaza, Providence, Rhode Island 02903. Citizens may have an interest in a portion of the funds at issue, as described below and shown in Exhibit A hereto.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations.

8. On information and belief, Flagstar maintains its main office at 5151 Corporate Drive, Troy, Michigan 48098. Flagstar may have an interest in a portion of the funds at issue, as described below and shown in Exhibit A hereto.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations.

9. Signature is defunct. On information and belief, Flagstar acquired substantially all of Signature's assets. Thus, Flagstar, as a successor to Signature, may have an interest in a portion of the funds at issue, as described below and shown in Exhibit A hereto.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations.

10. On information and belief, IDB maintains its main office at 1114 6th Avenue, New York, New York 10036. IDB may have an interest in a portion of the funds at issue, as described below and shown in Exhibit A hereto.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations.

11. On information and belief, Investors maintains its main office at 101 John F Kennedy Parkway, Short Hills, New Jersey 07078. Investors may have an interest in a portion of the funds at issue, as described below and shown in Exhibit A hereto.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations.

12. On information and belief, Chase maintains its main office at 1111 Polaris Parkway, Columbus, Ohio 43240. Chase may have an interest in a portion of the funds at issue, as described below and shown in Exhibit A hereto.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations.

13. On information and belief, First Republic is now part of Chase. Chase, as successor

to First Republic, may have an interest in a portion of the funds at issue, as described below and shown in Exhibit A hereto.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations.

14. On information and belief, Lakeland maintains its main office at 2717 Route 23, Newfoundland, New Jersey 07435. Lakeland may have an interest in a portion of the funds at issue, as described below and shown in Exhibit A hereto.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations.

15. On information and belief, MCB maintains its main office at 99 Park Avenue, 12th Floor, New York, New York 10016. MCB may have an interest in a portion of the funds at issue, as described below and shown in Exhibit A hereto.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations.

16. On information and belief, NCB maintains its main office at 325 Hamilton Avenue, White Plains, New York 10601. NCB may have an interest in a portion of the funds at issue, as described below and shown in Exhibit A hereto.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations.

17. On information and belief, Santander maintains its main office at 824 North Market Street, Suite 100, Wilmington, Delaware 19801. Santander may have an interest in a portion of the funds at issue, as described below and shown in Exhibit A hereto.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of

the allegations.

18. On information and belief, TD Bank maintains its main office at 2035 Limestone Road, Wilmington, Delaware 19808. TD Bank may have an interest in a portion of the funds at issue, as described below and shown in Exhibit A hereto.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations.

19. On information and belief, Trustco maintains its main office at 1 Sarnowski Drive, Glenville, New York 12302. Trustco may have an interest in a portion of the funds at issue, as described below and shown in Exhibit A hereto.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations.

20. On information and belief, WSFS maintains its main office at 500 Delaware Avenue, Wilmington, Delaware 19801. WSFS may have an interest in a portion of the funds at issue, as described below and shown in Exhibit A hereto.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations.

21. The Claimants are minimally diverse. CMS is a citizen of the State of New Jersey, and at least one Claimant Bank is not. For example, Canadian Imperial is a citizen of a foreign nation. *See* Paragraph 6, *supra; see also Grande Vil!. LLC v. CIBC Inc.,* Nos. 14-3495 & 14-5047, 2018 U.S. Dist. LEXIS 80662, at *29 (D.N.J. Mar. 30, 2018). Because at least two Claimants are diverse from one another, the court need not consider the citizenship of any other Claimant. *See State Farm Fire & Cas. Co. v. Tashire,* 386 U.S. 523, 530 (1967); ("The interpleader statute, 28 U.S. C. § 1335, ... has been uniformly construed to require only 'minimal diversity,' that is,

diversity of citizenship between two or more claimants, without regard to the circumstance that other rival claimants may be cocitizens."); *Reassure Am. Life Ins. Co. v. Gennaro J Perillo & Minnie,* No. 09-1878, 2011 U.S. Dist. LEXIS 21337, at *6 (D.N.J. Mar. 2, 2011) ("As long as two claimants are diverse from each other, the citizenships of the stakeholder or of other rival claimants are irrelevant.").

**RESPONSE:** Admits.

22. This Court has subject matter jurisdiction because the Claimants are minimally diverse, and the sum at issue exceeds $500. *See* 28 U.S.C. § 1335.

**RESPONSE:** Admits.

23. Venue is properly laid here because CMS resides in the District ofN ew Jersey. *See* 28 U.S.C. § 1397 ("Any civil action of interpleader ... under section 1335 of this title may be brought in the judicial district in which one or more of the claimants reside.").

**RESPONSE:** Admits.

**II.   Facts**

24. On or about January 24, 2023, CMS opened a Truist deposit account (the "Account").

**RESPONSE:** Admits.

25. Between April 17 and April 21, 2024, CMS deposited 105 checks into the Account that are not payable to or indorsed in favor of CMS (the "Checks"). CMS claims an interest in the proceeds of each Check. True and correct copies of the Checks, redacted to protect account numbers and personally identifying information, are appended here as **Exhibit A.**

**RESPONSE:** Admits.

26. It is unclear whether CMS can enforce each Check. Each Claimant Banks may

have an interest in the proceeds of the Check or Checks that it paid.

    **RESPONSE:** Denies.

27. Most of the Checks bear illegible payee signatures, and Truist has no means to determine whether any payee signature is both authentic and authorized. Each Claimant Banks would have an interest in the proceeds of any Check(s) it paid that bears an inauthentic and/or unauthorized payee signature.

    **RESPONSE:** Denies.

28. The Claimant Banks paid the following Checks:

    (a) Alma paid three checks (check nos. 1015, 1022, and 1035), each of which was drawn on the Alma account ending in 3229 in the amount of $3,000.00;

    (b) Apple paid check no. 239, which was drawn on the Apple account ending in 8997 in the amount of $100.00;

    (c) Axos paid check no. 1196, which was drawn on the Axos account ending in 3911 in the amount of $4,000.00;

    (d) BANA paid:

      i. check no. 3988, which was drawn on the BANA account endng in 1958 in the amount of $1,100.00;

      ii. check no. 2089, which was drawn on the BANA account ending in 2347 in the amount of $2,500.00;

      iii. check no. 2565, which was drawn on the BANA account ending in 2565 in the amount of $5,000.00; and

      iv. check no. 1285, which was drawn on the BANA account ending in 6954 in the amount of $1,000.00;

  (e)  Canadian Imperial paid three checks that were drawn on the Canadian Imperial account ending in 2015, in the amounts of $1,220.00 (check no. 25813), $2,300.00 (check no. 25815), and $2,000.00 (check no. 26217);

  (f)  Citizens paid three checks that were drawn on the Citizens account ending in 4240, in the amounts of $4,250.00 (check no. 5100), $5,500.00 (check no. 5080), and $8,000.00 (check no. 5008);

  (g)  First Republic paid check no. 6493, which was drawn on the First Republic account ending in 6795 in the amount of $3,000.00;

  (h)  Flagstar paid:

    (i)  a check drawn on the Flagstar account ending in 9252 in the amount of $988.08;

    (ii)  three checks drawn on the Flagstar account ending in 5020, in the amounts of $7,000.00 (check no. 3500), $7,500.00 (check no. 3517), and $7,500.00 (check no. 3514); and

    (iii)  (iii) five checks drawn on the Flagstar account ending in 3222, in the amounts of $6,500.00 (check no. 5006), $2,500.00 (check no. 5036), $4,000.00 (check no. 5028), $5,000.00 (check no. 5061), and $6,250 (check no. 5090);

  (i)  IDB paid:

    (i)  check no. 243217, which was drawn on the IDB account ending in 6746 in the amount of $1,358.25;

    (ii)  two checks drawn on the IDB account ending in 6846, both in the amount of $500.00 (check nos. 8759 and 8756); and

    (iii)  three checks drawn on the IDB account ending in 0215, in the

amounts of $19,510.00 (check no. 1711), $23,900.00 (check no. 1719), and $27,000.00 (check no. 1725);

 (j) Investors paid check no. 1040, which was drawn on the Investors account ending in 3648 in the amount of $25,000.00;

 (k) Chase paid:

  (i) two checks drawn on the Chase account ending in 8987, each in the amount of $1,000.00 (check nos. 741 and 744);

  (ii) check no. 5245 drawn on the Chase account ending in 0089, in the amount of $3,500.00;

  (iii) check no. 1766 drawn on the Chase account ending in 2606, in the amount of $5,000.00;

  (iv) check no. 1509 drawn on the Chase account ending in 9709 in the amount of $5,000.00;

  (v) check no. 1791 drawn on the Chase account ending in 5350, in the amount of $3,000.00;

  (vi) check no. 1811 drawn on the Chase account ending in 8063, in the amount of $2,500.00;

  (vii) check no. 6514 drawn on the Chase account ending in 5432, in the amount of $9,800.00;

  (viii) three checks drawn on the Chase account ending in 2286, in the amounts of $8,000.00 (check no. 803), $5,800.00 (check no. 812), and $5,000 (check no. 818);

  (ix) check no. 12595 drawn on the Chase account ending in 9665, in the

amount of $8,500.00;

(x) checks nos. 1764, 1767, and 1773, each drawn on the Chase account ending in 8627 in the amount of $10,000.00;

(xi) check no. 1555 drawn on the Chase account ending in 9709, in the amount of $4,072.00;

(xii) check no. 2515 drawn on the Chase account ending in 7418, in the amount of $1,500.00;

(xiii) two checks drawn on the Chase account ending in 1907, in the amounts of $315.00 (check no. 7567) and $4,960.00 (check no. 7670);

(xiv) check no. 1255 drawn on the Chase account ending in 8277, in the amount of $1397.00;

(xv) check no. 474 drawn on the Chase account ending in 9676, in the amount of $1,600.00;

(xvi) three checks drawn on the Chase account ending in 6713, in the amounts of $1,000.00 (check no. 79719), $4,375.00 (check no. 79706), and $4,950.00 (check no. 79729);

(xvii) check no. 9386 drawn on the Chase account ending in 4766, in the amount of $8,000.00;

(xviii) check no. 220 drawn on the Chase account ending in 8521, in the amount of $550.00;

(xix) eight checks drawn on the Chase account ending in 2833, in the amounts of $51.00 (check nos. 55521, 56617, 57365, and 58638), $87.00 (check no. 58126), $146.00 (check no. 58081), and $139.00 (check no. 58886);

(xx) check no. 2200 drawn on the Chase account ending in 7899, in the amount of $1,000.00;

(xxi) check no. 66619 drawn on the Chase account ending in 5981, in the amount of $2,500.00;

(xxii) check no. 284 drawn on the Chase account ending in 8987, in the amount of $1,000.00;

(xxiii) check no. 1101 drawn on the Chase account ending in 8033, in the amount of $3,500.00; and

(xxiv) check no. 355 drawn on the Chase account ending in 0612, in the amount of $15,000.00;

(l) Lakeland paid:

(i) check no. 37583 drawn on the Lakeland account ending in 4772, in the amount of $750.00; and

(ii) three checks drawn on the Lakeland account ending in 2051, in the amounts of $180 (check nos. 2537 and 2380) and $1,500.00 (check no. 2399)

(m) MCB paid check no. 123, which was drawn on the MCB account ending in 5348 in the amount of $10,000.00;

(n) NCB paid check no. 679, which was drawn on the NCB account ending in 7236 in the amount of $3,600.00;

(o) Santander paid:

(i) checks nos. 9617 and 9620, both drawn on the Santander account ending in 4849 in the amount of $2,000.00;

(ii) check no. 5493, drawn on the Santander account ending in 3536 in

11

the amount of $3,600.00; and

(iii) three checks drawn on the Santander account ending in 0008, in the amounts of $4,700.00 (check no. 5493), $4,000 (check no. 5516), and $3,900 (check no. 5524);

(p) Signature paid check no. 220 drawn on the Signature account ending in 6715, in the amount of $3,000;

(q) TD Bank paid:

(i) check no. 659 both drawn on the TD Bank account ending in 8137, in the amount of $1,000.00;

(ii) check no. 13756 both drawn on the TD Bank account ending in 4159, in the amount of $525.00;

(iii) check no. 2074 both drawn on the TD Bank account ending in 0202, in the amount of $2,000.00;

(iv) four checks drawn on the TD Bank account ending in 1176, in the amounts of $200.00 (check nos. 11069, 11758, and 12418), and $3,000.00 (check no. 12450);

(v) check no. 90298 both drawn on the TD Bank account ending in 0468, in the amount of $12,000.00;

(vi) three checks drawn on the TD Bank account ending in 4581, in the amounts of $2,459.33 (check no. 4036), $1,975.00 (check no. 4024), and $925.30 (check no. 4088);

(vii) check no. 3310 drawn on the TD Bank account ending in 2379, in the amount of $4,500.00;

      (viii)    two checks drawn on the TD Bank account ending in 7155, in the amounts of $1,399.00 (check no. 38953) and $1,189.00 (check no. 38979); and

      (ix)    check no. 3610 drawn on the TD Bank account ending in 4521, in the amount of $35.00;

    (r)    Trustco paid check no. 1733 drawn on the Trutco account ending in 2395, in the amount of $5,200; and

    (s)    WSFS paid three checks drawn on the WSFS account ending in 6646, in the amounts of $1,800.00 (check nos. 3580 and 3617) and $1,000.00 (check no. 3656).

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations.

29.    At this time and based on the information available to it, Truist cannot determine which Claimant has an interest in the proceeds of each Check.

**RESPONSE:** Denies.

30.    Truist froze the Account. As of the date of this filing, $352,184.60 remains in the Account (the "<u>Funds</u>").

**RESPONSE:** Admits.

31.    Truist now files this Interpleader Complaint so the Court may determine which Claimant or Claimants are entitled to the Funds.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations.

<u>COUNT ONE – INTERPLEADER</u>

32.    Truist incorporates all preceding paragraphs as if fully set forth herein.

**RESPONSE:** Defendant repeats the above responses.

33. Upon information and belief, each Claimant claims or may claim an interest in some portion of the Funds.

**RESPONSE:** Denies.

34. Truist is not in a position to weigh Claimants' conflicting claims to the Funds.

**RESPONSE:** Denies.

35. Truist is an impartial stakeholder with no interest in either the Account or the Funds.

**RESPONSE:** Denies.

36. Pursuant to 28 U.S.C. § 1335, Truist seeks a Court Order allowing Truist to deposit the Funds into this Court's registry, so the Court may conduct proceedings to determine the Funds' proper disposition.

**RESPONSE:** Denies knowledge or information sufficient to form a belief as to the truth of the allegations.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

1. CMS received the Checks.

2. The Checks are negotiable instruments.

3. The Payee of each Check endorsed each Check in blank.

4. The Checks were then provided by each Payee to CMS in exchange for consideration.

5. CMS took each Check in good faith, without notice that any check was overdue, dishonored, subject to any valid claim, or unauthorized.

6. CMS has no reason to question the authenticity of any of the Checks.

7. CMS, having received the Checks endorsed in blank, became the holder in due course of the Checks.

8. As the holder in due course of the Checks, CMS deposited the Checks into its account at Truist.

9. The Claimant Banks thereafter paid Truist for all the Checks and Truist has $352,184.60 in the Account.

10. Truist then wrongfully froze the Account and, despite the fact that none of the Payees or any of the Claimant Banks raised any issue with regard to the Checks, Truist refused to provide CMS with access to its funds.

11. As the holder in due course of the Checks, CMS was entitled to deposit the Checks into the Account and is entitled to the funds that were frozen.

12. As to each Claimant Bank, as CMS was the holder in due course of the Checks and the Claimant Banks paid the Checks without any issues arising, CMS is entitled to the funds with regard to each respective Claimant Bank.

## Second Affirmative Defense

13. CMS was the holder in due course of each of the Checks.

14. The Claimant Banks each paid the amounts on the respective Checks to Truist.

15. None of the Claimant Banks have raised any issues with regard to the negotiable instruments.

16. As a result, the Claimant Banks have waived any right to the funds they paid.

WHEREFORE, Defendant CMS Orders, LLC demands judgment in its favor and against Plaintiff Truist and the Claimant Banks for the amount of the Checks paid by each Claimant

Bank, together with such other and further relief as the Court may deem just and proper.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

      */s/ Jeremy J. Zacharias*
JEREMY J. ZACHARIAS (Bar No. 108712014)
jjZacharias@mdwcg.com
MARSHALL DENNEHEY, P.C.
150000 Midlantic Dr., Ste. 200
P.O. Box 5429
Mount Laurel, NJ  08054
Telephone:  (856) 779-6103

ERIC LEE (Bar No. 961299)
*Pro Hac Vice* pending
lee@leeamlaw.com
Lee & Amtzis, P.L.
5550 Glades Rd., Suite 401
Boca Raton, FL  33431
Telephone:  (561) 981-9988

**Attorneys for Defendant**
**CMS Orders, LLC**